UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | § |
| | § |
| v. | § CRIMINAL NO. 4:23-cr-00397 |
| | § |
| ARTHUR LEE WAFER, a.k.a. "AJ," | § |
| | § |
| | § |
| Defendant. | § |

## PLEA AGREEMENT

The United States of America, by and through Alamdar S. Hamdani, United States Attorney for the Southern District of Texas, and Jennifer K. Weinhold, Assistant United States Attorney, and Jodi Anton, Department of Justice Trial Attorney, and the defendant, Arthur Lee Wafer, a.k.a. "AJ," ("Defendant"), and Defendant's counsel, pursuant to Rule 11(c)(1)(A) of the Federal Rules of Criminal Procedure, state that they have entered into an agreement, the terms and conditions of which are as follows:

### Defendant's Agreement

1. Defendant agrees to plead guilty to Count Seven of the Superseding Indictment. Count Seven charges the Defendant with Possession with Intent to Distribute and Distribution of Methamphetamine, in violation of Title 21, United States Code Sections 841(a)(1) and 841(b)(1)(C), and Title 18, United States Code, Section 2. The Government will seek to dismiss Count One of the Superseding Indictment at the time of sentencing. Defendant, by entering this plea, agrees that he is waiving any right to have the facts that the law makes essential to the punishment either charged in the Superseding Indictment, or proved to a jury or proven beyond a reasonable doubt.

### Punishment Range

2. The statutory maximum penalty for Count Seven is not more than twenty years imprisonment, at least three years of supervised release, and up to a $~~1,000~~ 250,000.00 fine. Defendant acknowledges and understands that if he should violate the conditions of any period of supervised release which may be imposed as part of his sentence, then Defendant may be imprisoned for up to five years without credit for time already served on the term of supervised release prior to such violation. *See* Title 18, United Stated Code, sections 3559(a) and 3583(e)(3). Defendant understands that he cannot have the imposition or execution of the sentence suspended, nor is he eligible for parole.

### Mandatory Special Assessment

3. Pursuant to Title 18, United States Code, section 3013(a)(2)(A), immediately after sentencing, Defendant will pay to the Clerk of the United States District Court a special assessment in the amount of one hundred dollars ($100.00) per count of conviction. The payment will be by cashier's check or money order, payable to the Clerk of the United States District Court, c/o District Clerk's Office, P.O. Box 61010, Houston, Texas 77208, Attention: Finance.

### Immigration Consequences

4. Defendant recognizes that pleading guilty may have consequences with respect to his immigration status. Defendant understands that if he is not a citizen of the United States, by pleading guilty he may be removed from the United States, denied citizenship, and denied admission to the United States in the future. Defendant understands that if he is a naturalized United States citizen, pleading guilty may result in immigration consequences, such as denaturalization and potential deportation or removal from the United States. Defendant's

attorney has advised Defendant of the potential immigration consequences resulting from Defendant's plea of guilty, and Defendant affirms that he wants to plead guilty regardless of any immigration consequences that may result from the guilty plea and conviction.

## Waiver of Appeal, Collateral Review, and Statute of Limitations

5. Defendant is aware that Title 28, United States Code, section 1291, and Title 18, United States Code, section 3742, afford a defendant the right to appeal the conviction and sentence imposed. Defendant is also aware that Title 28, United States Code, section 2255, affords the right to contest or "collaterally attack" a conviction or sentence after the judgment of conviction and sentence has become final. Defendant knowingly and voluntarily waives the right to appeal or "collaterally attack" the conviction and sentence, except that Defendant does not waive the right to raise a claim of ineffective assistance of counsel on direct appeal, if otherwise permitted, or on collateral review in a motion under Title 28, United States Code, section 2255. In the event Defendant files a notice of appeal following the imposition of the sentence or later collaterally attacks his conviction or sentence, the United States will assert its rights under this agreement and seek specific performance of these waivers.

6. Defendant also agrees that should the conviction following the Defendant's plea of guilty pursuant to this agreement be vacated for any reason, then any prosecution that is not time-barred by the applicable statute of limitations on the date of the signing of this agreement (including any counts that the United States has agreed to dismiss at sentencing pursuant to this agreement) may be commenced or reinstated against the Defendant, notwithstanding the expiration of the statute of limitations between the signing of this agreement and the commencement or reinstatement of such prosecution. It is the intent of this agreement to waive all defenses based

on the statute of limitations with respect to any prosecution that is not time-barred on the date that this agreement is signed.

7. In agreeing to these waivers, Defendant is aware that a sentence has not yet been determined by the Court. Defendant is also aware that any estimate of the possible sentencing range under the sentencing guidelines that he may have received from his counsel, the United States or the Probation Office, is a prediction and not a promise, did not induce his guilty plea, and is not binding on the United States, the Probation Office or the Court. The United States does not make any promise or representation concerning what sentence the Defendant will receive. Defendant further understands and agrees that the United States Sentencing Guidelines are "effectively advisory" to the Court. *See United States v. Booker*, 543 U.S. 220 (2005). Accordingly, Defendant understands that, although the Court must consult the Sentencing Guidelines and must take them into account when sentencing Defendant, the Court is not bound to follow the Sentencing Guidelines nor sentence Defendant within the calculated guideline range.

8. Defendant understands and agrees that each and all waivers contained in the agreement are made in exchange for the concessions made by the United States in this plea agreement.

### The United States' Agreements

9. The United States agrees to each of the following:

(a) If Defendant pleads guilty to Count Seven of the Superseding Indictment and persists in that plea through sentencing, and if the Court accepts this plea agreement, the United States will move to dismiss any remaining counts of the Superseding Indictment at the time of sentencing. The defendant agrees that with respect to any and all dismissed charges he is not a 'prevailing party' within the meaning of the 'Hyde Amendment,' Section 617, P.L. 105-119 (Nov. 26, 1997) and will not file any claim under that law; and

(b) If the Court determines that Defendant qualifies for an adjustment under U.S.S.G. § 3E1.1(a), and the offense level prior to operation of § 3E1.1(a) is 16 or

4

greater, the United States will move under § 3E1.1(b) for an additional one-level reduction because Defendant timely notified authorities of his intent to plead guilty, thereby permitting the United States to avoid preparing for trial and permitting the United States and the Court to allocate their resources more efficiently.

### Agreement Binding – Southern District of Texas Only

10. The United States Attorney's Office for the Southern District of Texas agrees that it will not further criminally prosecute Defendant in the Southern District of Texas for the specific conduct described in the Superseding Indictment. This plea agreement binds only the United States Attorney's Office for the Southern District of Texas and Defendant. It does not bind any other United States Attorney's Office. The United States Attorney's Office for the Southern District of Texas will bring this plea agreement and the full extent of Defendant's cooperation to the attention of other prosecuting offices, if requested.

### United States' Non-Waiver of Appeal

11. The United States reserves the right to carry out its responsibilities under guidelines sentencing. Specifically, the United States reserves the right:

(a) to bring the facts of this case, including evidence in the files of the United States Attorney's Office for the Southern District of Texas or the files of any investigative agency, to the attention of the Probation Office in connection with that office's preparation of a presentence report;

(b) to set forth or dispute sentencing factors or facts material to sentencing;

(c) to seek resolution of such factors or facts in conference with Defendant's counsel and the Probation Office;

(d) to file a pleading relating to these issues, in accordance with section 6A1.2 of the United States Sentencing Guidelines and Title 18, United States Code, section 3553(a); and

(e) to appeal the sentence imposed or the manner in which it was determined.

## Sentence Determination

12. Defendant is aware that the sentence will be imposed after consideration of the United States Sentencing Guidelines and Policy Statements, which are only advisory, as well as the provisions of Title 18, United States Code, section 3553(a). Defendant nonetheless acknowledges and agrees that the Court has authority to impose any sentence up to and including the statutory maximum set for the offense(s) to which Defendant pleads guilty, and that the sentence to be imposed is within the sole discretion of the sentencing judge after the Court has consulted the applicable Sentencing Guidelines. Defendant understands and agrees that the parties' positions regarding the application of the Sentencing Guidelines do not bind the Court and that the sentence imposed is within the discretion of the sentencing judge. If the Court should impose any sentence up to the maximum established by statute, or should the Court order any or all of the sentences imposed to run consecutively, Defendant cannot, for that reason alone, withdraw a guilty plea, and will remain bound to fulfill all of the obligations under this plea agreement.

## Rights at Trial

13. Defendant understands that by entering into this agreement, he surrenders certain rights as provided in this plea agreement. Defendant understands that the rights of a defendant include the following:

>  (a)     If Defendant persisted in a plea of not guilty to the charges, Defendant would have the right to a speedy jury trial with the assistance of counsel. The trial may be conducted by a judge sitting without a jury if Defendant, the United States, and the Court all agree;

>  (b)     At a trial, the United States would be required to present witnesses and other evidence against Defendant. Defendant would have the opportunity to confront those witnesses and his attorney would be allowed to cross-examine them. In turn, Defendant could, but would not be required to, present witnesses and other evidence on his own behalf. If the witnesses for Defendant would not appear

6

voluntarily, he could require their attendance through the subpoena power of the court; and

(c)   At a trial, Defendant could rely on a privilege against self-incrimination and decline to testify, and no inference of guilt could be drawn from such refusal to testify. However, if Defendant desired to do so, he could testify on his own behalf.

### Factual Basis for Guilty Plea

14. Defendant is pleading guilty because he is in fact guilty of the charge contained in Count Seven of the Superseding Indictment. If this case were to proceed to trial, the United States could prove each element of the offense beyond a reasonable doubt. The following facts, among others, would be offered to establish Defendant's guilt:

From approximately the beginning of February 2023 through May 2023, Defendant conspired and agreed with others to distribute and possess with the intent to distribute controlled substances, including mixtures and substances containing detectable amounts of methamphetamine and fentanyl. Co-defendants Derek Pervis HENRY, III, a.k.a. "Lil Pug" (HNERY, III) and Gerald Wayne DUNCAN, a.k.a. "Pig" (DUNCAN were operating a drug lab located at 4710 Airport Blvd., Apt. #106, Houston, Texas 77048 (Airport Blvd. Lab), where the two would manufacture pressed methamphetamine and pressed fentanyl pills. As part of this conspiracy, Defendant was intercepted over HENRY, III's cellular telephone assisting co-defendant HENRY, III to facilitate his drug trafficking operation. Primarily, Defendant acted as a mid-level supplier and purchased pressed methamphetamine pills from HENRY, III.

For example, on April 6, 2023, at 2:07 p.m., on an intercepted wire communication, Defendant called HENRY, III requesting four kilograms of methamphetamine and implying that Defendant had an out-of-town customer coming in to purchase the drugs. HENRY, III told Defendant that he only had two kilograms but would attempt to get an additional two kilograms

7

of methamphetamine. The two then negotiated the price of the methamphetamine.

At 2:16 p.m. on the same date, HENRY, III was intercepted calling "Bobby" (whose identity is unknown but through interceptions agents believe is one of HENRY, III's methamphetamine suppliers) to obtain two more kilograms of methamphetamine. Approximately ten minutes later, HENRY, III was intercepted calling Defendant to let him know that he was working on obtaining the additional methamphetamine. Defendant told HENRY, III that as soon as he picked up the methamphetamine, Defendant's associate would be able to get on the highway. HENRY, III told the Defendant to give him about an hour.

At approximately 4:26 p.m. on the same day, agents surveilled HENRY, III's residence located at 5403 Groveton Street, Houston, Texas 77033 and saw a green 2005 Chevrolet Malibu sedan, bearing Texas license plate SSD2151 and registered to Bertha Wafer, arrive at HENRY, III's residence. Surveillance units watched Defendant drive up with an unidentified black male (later identified as co-defendant Darrell Dewayne GRAY). Both approached HENRY, III's front door and entered.

At almost the same time, law enforcement intercepted a call where HENRY, III called "Bobby" and told him that the methamphetamine source of supply got off work at 4:00 p.m. and should have already contacted him. While on that call, HENRY, III told "Bobby" that the customers were knocking on his door already. HENRY, III told "Bobby" that he would give Defendant and the out-of-town associate (later identified as GRAY), the two kilograms of methamphetamine and keep the remaining methamphetamine.

At approximately 4:27 p.m. on that same day, HENRY, III called an unknown female. During the call, law enforcement heard HENRY, III say that Defendant and co-defendant GRAY

8

are going to have to "rock out on Airport" and then HENRY,III sent Defendant and GRAY to the lab. Law enforcement then saw Defendant and GRAY leave and go to HENRY III's Airport Blvd. Lab. At approximately 4:35 p.m., law enforcement intercepted a call where Defendant asked HENRY, III to let DUNCAN know that he was outside and HENRY, III agreed. Thereafter, HENRY, III called DUNCAN and asked him to give Defendant and GRAY the "two blocks" of methamphetamine. Agents know that "two blocks" of methamphetamine is slang terminology that refers to two kilograms of methamphetamine. DUNCAN asked whether he should give Defendant the whole two blocks and HENRY, III said, "yes." DUNCAN replied "[o]kay." HENRY, III told DUNCAN that the Defendant and GRAY were outside.

At approximately 4:39 p.m., surveillance at the Airport Blvd. Lab saw DUNCAN exit the breezeway and approach Defendant and GRAY who were in the 2005 Chevy Malibu. DUNCAN was carrying a white plastic bag in his left hand. Surveillance then saw DUNCAN deliver the bag to the driver's open window where Defendant was seated and thereafter the Chevy Malibu left the Airport Blvd. Lab. Approximately eleven minutes later, surveillance saw Defendant driving the Malibu arrive and park in the driveway of the residence at 4745 Bricker St., Houston, Texas, 77033. Surveillance also saw a white 2012 Hyundai sedan, bearing Texas license plate RXS9950, park in front of the residence with the headlights illuminated and leave a few minutes later.

The Hyundai was subsequently—and unrelatedly—stopped by a Waller County Deputy for speeding. GRAY was driving and had his wife and children in the vehicle. During the stop, the occupants were asked to exit the vehicle for officer safety. The Deputy requested consent to search the vehicle, which GRAY refused. The Deputy deployed his K9 for a free-air sniff, during which time the K9 positively alerted to the presence of narcotic odor. A probable cause search

9

was then conducted on the vehicle.

During the search, deputies located a purple Crown Royal bag under the driver's seat that contained $11,400 in U.S. currency. While checking the trunk of the Hyundai, deputies also located what appeared to the same white plastic bag that DUNCAN had given Defendant earlier outside the Airport Blvd. Lab. In it was two plastic containers that had a clear, crystal-like substance that they recognized from their training and experience to be methamphetamine. The seized substance was ultimately sent to the DEA for lab analysis, which confirmed it was approximately 1,981 grams of a mixture and substance containing a detectable amount of methamphetamine.

Defendant provided GRAY the methamphetamine that was found in GRAY's car. Defendant facilitated the purchase of the methamphetamine for GRAY through the phone calls with HENRY, III referenced above.

All of the above facts occurred within the Southern District of Texas.

### Breach of Plea Agreement

15. If Defendant should fail in any way to fulfill completely all of the obligations under this plea agreement, the United States will be released from its obligations under the plea agreement, and Defendant's plea and sentence will stand. If at any time Defendant retains, conceals, or disposes of assets in violation of this plea agreement, including required financial information, or if Defendant knowingly withholds evidence or is otherwise not completely truthful with the United States, then the United States may move the Court to set aside the guilty plea and reinstate prosecution. Any information and documents that have been disclosed by Defendant,

whether prior to or subsequent to this plea agreement, and all leads derived therefrom, will be used against Defendant in any prosecution.

## Monetary Penalties, Assets and Financial Disclosures

16. Defendant understands and agrees that monetary penalties will be subject to immediate enforcement as provided in 18 U.S.C. § 3613 and that monetary penalties will be submitted to the Treasury Offset Program so that payments to the Defendant may be applied to federal debts.

17. Defendant understands that restitution, forfeiture, and fines are separate components of sentencing and are separate obligations. Defendant agrees to take all steps necessary to pass clear title to forfeitable assets to the United States and to assist fully in the collection of restitution and fines. Subject to the provisions of paragraph 5 above, Defendant waives the right to challenge in any manner, including by direct appeal or in a collateral proceeding, any restitution order, any forfeiture orders, and any fines.

## Forfeiture

18. As part of this plea agreement, Defendant agrees to the following:

(a) to forfeit, via either an administrative or judicial proceeding, all assets listed in the charging document (including any Supplemental Notice of Forfeiture), and to forfeit or abandon any assets seized during this investigation or a related investigation; and

(b) to the order of forfeiture becoming final as to Defendant immediately following this guilty plea or immediately following entry of the forfeiture order, whichever applies.

## Financial Statement

19. Defendant agrees to truthfully complete under penalty of perjury, within thirty days of the execution of this plea agreement, a financial statement on a form provided by the United States Attorney's Office and to update the statement within seven days of any material change.

Defendant also agrees to make full disclosure to the United States Probation Office of all current and anticipated assets in which Defendant has an interest both before sentencing and again before termination of supervised release or probation, with such disclosures to be shared with the United States Attorney's Office.

20. Defendant further agrees not to dispose or transfer any assets without the prior written permission of the United States and to authorize the release of all financial information requested by the United States, including, but not limited to, credit histories and tax returns. Defendant agrees to discuss and answer any questions by the United States relating to Defendant's financial disclosure, including in a deposition or informal debtor exam, whether before or after sentencing.

## Complete Agreement

21. This written plea agreement, consisting of fifteen pages, including the attached addendum of Defendant and Defendant's counsel, constitutes the complete plea agreement between the United States, Defendant, and Defendant's counsel. Other than any written proffer agreement that may have been entered into between the United States and Defendant, this agreement supersedes any prior understandings, promises, agreements, or conditions between the United States and Defendant. No additional understandings, promises, agreements, or conditions have been entered into other than those set forth in this agreement, and none will be entered into unless in writing and signed by all parties. Defendant acknowledges that no threats have been made against him and that he is pleading guilty freely and voluntarily because he is guilty.

//

//

22. Any modification of this plea agreement must be in writing and signed by all parties.

Filed at _Houston_, Texas, on _February 28_, 2024.

_____
Defendant

Subscribed and sworn to before me on _February 28_, 2024.

NATHAN KYLE OCHSNER, Clerk
UNITED STATES DISTRICT CLERK

By: _____
Deputy United States District Clerk

APPROVED:

Nicholas J. Ganjei
United States Attorney

By: _____     _____
Jennifer K. Weinhold                    JoAnne Marie Musick, Esq.
Assistant United States Attorney        Attorney for Defendant Artur Lee Wafer
Southern District of Texas

_____ for JODI ANTON
Jodi Anton
Trial Attorney
Violent Crime and Racketeering Section
Department of Justice

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| v. § | CRIMINAL NO. 4:23-cr-00397 |
| § | |
| ARTHUR LEE WAFER, a.k.a. "AJ," § | |
| § | |
| Defendant. § | |

**PLEA AGREEMENT – ADDENDUM**

I have fully explained to Defendant his rights with respect to the pending Superseding Indictment. I have reviewed the provisions of the United States Sentencing Commission's Guidelines Manual and Policy Statements and I have fully and carefully explained to Defendant the provisions of those Guidelines which may apply in this case. I have also explained to Defendant that the Sentencing Guidelines are only advisory, and the court may sentence Defendant up to the maximum allowed by statute per count of conviction. I have also explained to Defendant that sentences on multiple counts may be imposed to run consecutively to one another or to any other sentence. Further, I have carefully reviewed every part of this plea agreement with Defendant. To my knowledge, Defendant's decision to enter into this agreement is an informed and voluntary one.

_____
JoAnne Marie Musick, Esq.
Attorney for Defendant Arthur Lee Wafer

2-28-2025
Date

14

I have consulted with my attorney and fully understand all my rights with respect to the Superseding Indictment pending against me. My attorney has fully explained, and I understand, all my rights with respect to the provisions of the United States Sentencing Commission's Guidelines Manual which may apply in my case. I have read and carefully reviewed every part of this plea agreement with my attorney. I understand this agreement and I voluntarily agree to its terms.

_____          2.28.2025
Arthur Lee Wafer                                              Date